IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANN RABOVSKY and LYNN C. DOBRICK, Personal Representative of the Estate of VALENT RABOVSKY, Deceased<br>      *Plaintiffs*<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.<br>      *Defendants* | : CIVIL ACTION<br>:<br>: NO. 10-3202<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 JUNE 15, 2016

## MEMORANDUM OPINION

**INTRODUCTION**

On March 30, 2010, Valent Rabovsky ("Decedent") and his wife, Ann Rabovsky (collectively, "Plaintiffs"), commenced a civil action against various defendants in the Philadelphia County Court of Common Pleas,[1] claiming that Valent Rabovsky, who had worked as a millwright since the 1950's, developed malignant mesothelioma from work-related exposure to asbestos and products containing asbestos, which were produced, manufactured, or sold by Defendants.[2] This civil action was removed to federal court on July 1, 2010.[3] [ECF 1]. In their

---

[1] *Valent Rabovsky, et vir. v. Air & Liquid Sys. Corp., et al.*, 1003-5767.

[2] Air & Liquid Systems Corporation (sued as successor-by-merger to Buffalo Pumps, Inc.), A.K. Steel Holding Corporation f/k/a Armco, Inc., Allegheny Energy Supply Company, LLC, Anchor Darling Valve Company, Beazer East, Inc. (individually and as successor-in-interest to Koppers Company, Inc.), BW/IP International, Inc. (individually and as successor-in-interest to Byron Jackson Pump Company), CBS Corporation f/k/a Viacom, Inc. (sued as successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation and also as successor-in-interest to BF Sturtevant), Crane Co. (individually and as successor-in-interest to Chapman Valve Company), Crane Environmental, Inc. (individually and as successor-in-interest to Chicago Heater Co., Inc.), Crown Cork & Seal Company, Inc. (individually and as successor-in-interest to Mudet Cork Company), The Doe Run Resources Corporation f/k/a St. Joseph Lead Co., Duequesne Light Company, E.I. Du Pont du Nemours & Company, Eichleay Engineers, Inc. of California, Electrolux Home Products (as successor-by-merger to White Consolidated Industries, as

amended complaint, Plaintiffs averred that Defendant Crane Co., individually and as successor-in-interest to Chapman Valve Company, manufactured, produced, sold, and/or supplied Crane Co. valves at Decedent's work sites. Am. Compl. ¶ 3. [ECF 237]. Plaintiffs proceeded to trial against only Defendant Crane Co.; however, liability assessment of certain other defendants (the "Settling Defendants") was also presented to the jury.

On February 2, 2016, a jury trial was held on the issue of whether Defendant Crane Co. was negligent in failing to warn Plaintiffs of the danger of exposure to asbestos.[4] The jury found in favor of Plaintiffs and awarded $1,085,000 in damages, consisting of $835,000 in compensatory damages for the Decedent's Estate under the Survival Act, 20 Pa. C.S. § 3371, *et seq.*, and $250,000 for Ann Rabovsky for loss of consortium. The jury apportioned liability amongst Defendant Crane Co. and the Settling Defendants, and specifically assessed liability as follows:

---

successor-by-merger to Copes Vulcan, Inc.), Elliott Turbo Machinery Company a/k/a Elliott Company, Flowserve (US), Inc. (successor-by-merger to Durco International and successor to Byron Jackson Pump Company), Foster Wheeler Energy Corporation, Garlock Sealing Technologies, LLC (individually and as successor-in-interest to Garlock, Inc.), General Electric Company, Goulds Pumps, Inc., The Great Atlantic & Pacific Tea Company d/b/a A&P Supermarkets, Honeywell International (individually and as successor-in-interest to Bendix Corporation), IMO Industries, Inc. (individually and as successor-in-interest to Delaval Turbine, Inc.), Ingersoll Rand Company (individually and as successor-in-interest-by-merger to Trane US, Inc.), Jervis B. Webb Company, Koppers, Inc., Kraft Foods Global, Inc. d/b/a Nabisco Brands, Pennsylvania Electric Company, Pevarnik Bros, Inc., Riley Power, Inc. f/k/a Riley Stoker Corporation, RRI Energy Services, Inc. d/b/a Reliant Energy, The Ruhlin Company f/k/a The John G. Ruhlin Construction Co., Trane US, Inc. f/k/a American Standard Companies, United States Steel Corporation, Viad Corporation f/k/a The Dial Corporation (individually and as successor-in-interest to Griscom-Russell Company), Wayne Crouse, Inc., and Yarway Corporation.

[3] This matter was part of Multidistrict Litigation-875 *In Re: Asbestos Products Liability Litigation (No. VI)* ("MDL-875").

[4] Prior to trial, Valent Rabovsky died and his daughter, Lynn C. Dobrick, was appointed the personal representative of the Estate of Valent Rabosvky on July 23, 2012. [ECF 219].

| Joint Tortfeasor Defendant | Apportioned Liability |
|---|---|
| Crane Co. | 30% |
| CBS Corporation | 25% |
| Foster Wheeler Energy Corp. | 20% |
| Goulds Pumps, Inc. | 13% |
| Doe Run Resources Corp. | 5% |
| Duquesne Light Company | 5% |
| Honeywell International | 2% |
| AK Steel Corporation | 0% |
| Beazer East, Inc. | 0% |
| IMO Industries, Inc. | 0% |
| Ingersoll-Rand | 0% |
| Pennsylvania Electric Company | 0% |
| United States Steel Corporation | 0% |
|  | 100% |

[ECF 361]. Pursuant to this Court's post-trial scheduling order, Plaintiffs and Defendant Crane Co. filed motions with supporting memoranda and later presented oral argument on whether and how the verdict should be molded.

Presently before this Court are: (1) Defendant Crane Co.'s *motion to mold the verdict and award*, [ECF 363]; (2) Plaintiffs' *motion to mold the verdict against Defendant Crane Co.*, [ECF 364], and Defendant's responses, [ECF 373, 374]; and (3) Plaintiffs' *motion for delay damages*, [ECF 359], Defendant's response, [ECF 362], Plaintiffs' *amended motion for delay damages*, [ECF 379], and Defendant's response. [ECF 382]. For the reasons set forth herein, Defendant Crane Co.'s motion to mold the verdict and award is denied; Plaintiffs' motions to mold the verdict against Defendant Crane Co. and for delay damages are granted.

**DISCUSSION**

In its motion to mold the verdict and award, Defendant Crane Co. contends that Plaintiffs have already been made whole through their settlement agreements with Settling Defendants prior to trial, and by present/future claims filed with asbestos bankruptcy trusts. Defendant Crane

3

Co. argues that Plaintiffs are, therefore, not entitled to further monetary award since the doctrine of joint and several liability does not support Plaintiffs' recovery of more than one satisfaction for one injury. Defendant Crane Co. further contends that the holding in *Charles v. Giant Eagle Mkts.*, 522 A.2d 1, 3 (Pa. 1987), a case relied upon by Plaintiffs for the proposition that a non-settling tort-feasor remains liable for his full proportionate share of the damage award regardless of the amount paid by a settling defendant, is inapplicable because Plaintiffs suffered no shortfall. Defendant Crane Co. offers no information or evidence to support its claim, but instead speculates that the total consideration paid by the Settling Defendants in exchange for Plaintiffs' release of claims, plus the amount received or which will be received as a result of claims filed with asbestos bankruptcy trusts, exceeds the jury's $1,085,000 verdict.[5]

In their motions to mold the verdict and for delay damages, Plaintiffs request that final judgment against Defendant Crane Co. be entered and the total verdict amount of $1,085,000 be molded to $325,500 to reflect the 30% amount of liability apportioned to Defendant Crane Co., and to that amount, apply delay damages. In support of these requests, Plaintiffs argue that: (1) Defendant Crane Co. is jointly and severally liable for Plaintiffs' damages; (2) Defendant Crane Co. is entitled to a set-off for any settlement amount agreed to with a Settling Defendant who the jury found was a joint tortfeasor; and (3) the verdict against Defendant Crane Co. cannot be less than the 30% share of liability apportioned to Defendant Crane Co. Plaintiffs further contend that

---

[5] Prior to oral argument regarding damages, Plaintiffs had offered to produce to Defendant Crane Co. the *pro rata* or *pro tanto* settlement amounts under a confidentiality agreement, if ordered by this Court. *See* Pltfs' Motion 8 n.2, [ECF 365]; *see also* Dft's Supplement to Record Re. Communication between Counsel. [ECF 380]. However, no party sought such a protective order. Plaintiffs submitted copies of the settlement agreements for this Court's *in camera* review only to determine whether Defendant Crane Co. would be entitled to a set-off.

4

there is no justification for any credit that would lower the judgment against Defendant Crane Co. below the jury's verdict, *i.e.*, Defendant Crane Co.'s $325,500 liability.

In light of the parties' opposing motions and arguments, the issues presented herein are whether Plaintiffs are entitled to a monetary award as determined by the jury (plus delay damages) and a molded verdict pursuant to Plaintiffs' undisclosed settlements with the Settling Defendants and asbestos bankruptcy trusts, and whether, under the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S. § 8324(a), Defendant Crane Co. may receive a credit, or set-off, for said settlements.

*Applicable Law*

Decedent was diagnosed with malignant mesothelioma in 2009. The parties do not dispute that Plaintiffs' claims accrued prior to the effective date of the Fair Share Act (also known as the Comparative Negligence Act).[6] The parties agree that the common law rule of joint and several liability applies. Under this common law rule, when a plaintiff seeks to impose joint and several liability on two or more defendants, the plaintiff seeks to recover a judgment which can be enforced, in whole or in part, against each of the defendants. *Sehl v. Neff*, 26 A.3d 1130, 1133 (Pa. Super. 2011) (quoting *Hileman v. Morelli,* 605 A.2d 377, 384–385 (Pa. Super. 1992) (quotation marks omitted)). That is, the imposition of joint and several liability enables an injured party to satisfy an entire judgment against any one of the tortfeasors, even if the wrongdoing of that tortfeasor contributed only a small part of the total harm inflicted. *Sehl*, 26 A.3d at 1133. If defendants are held jointly and severally liable, they may have contribution rights as between them, but this does not affect the plaintiff's right to collect the entire judgment from any one defendant. *Id.* at 1133-34.

---

[6] The Fair Share Act eliminated joint and several liability in Pennsylvania in cases that accrued on or after its effective date of June 28, 2011. *See* 42 Pa. C.S. § 7102.

Also applicable is the *Uniform Contribution Among Tortfeasors Act* ("UCATA"), a comprehensive statute that covers, *inter alia*, methods for computing set-offs. 42 Pa. C.S. § 8324(a); *Baker v. ACandS*, 755 A.2d 664, 667 (Pa. 2000) ("*Baker II*"). Relevant to this discussion is the section of the UCATA which provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proposition by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa. C.S. § 8326.

Under the UCATA, two actors are joint tortfeasors if their conduct causes a single harm which cannot be apportioned even though the actors may have acted independently. *United States v. Sunoco, Inc.*, 501 F. Supp. 2d 656, 661 (E.D. Pa. 2007) (quoting *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 25 (3d Cir. 1986) (finding that a strictly liable equipment manufacturer and a neglient equipment owner were joint tortfeasors, as their separate wrongdoings caused a single harm to plaintiff, who was injured when a piece of equipment broke)); *Baker I*, 729 A.2d at 1146 (citations omitted). Death by its nature is an indivisible injury. *Harsh v. Petroll*, 887 A.2d 209, 212 (Pa. Super. 2005) (finding joint tortfeasor status of negligent car driver and car manufacturer where plaintiff's injuries were considered a single injury caused by both entities).

The UCATA contemplates three set-off scenarios. First: if the settlement agreement is silent as to its classification, the set-off mechanism defaults to a *pro tanto* set-off and a nonsettling tortfeasor is entitled to have the verdict reduced by the actual amount of consideration paid by the settling tortfeasor. *Baker II*, 755 A.2d at 667; *see also Andoloro v. Armstrong World Indus., Inc.*, 799 A.2d 71, 78 (Pa. Super. 2002) (distinguishing between *pro rata* and *pro tanto* settlements as to a plaintiff settling a claim with a settlement trust). A settling

plaintiff is assured recovery of the full amount of the verdict regardless of any shortfall in consideration paid, and the remaining defendants are then subject to a greater proportionate share of liability. *Andoloro*, 799 A.2d at 78-79 (citing *Baker I*, 729 A.2d at 1151). Second: if the settlement agreement specifically provides for a *pro tanto* set-off, the UCATA contemplates that such a specific election will always control. *Baker II*, 755 A.2d at 667. Third: if the settlement agreement specifies a form of set-off other than a *pro tanto* set-off, *e.g.*, a *pro rata* set-off, a total claim could be reduced if greater than the consideration paid. *Id*. Such a *pro rata* set-off would allow a nonsettling tortfeasor to reduce the amount of money owed to plaintiffs in an amount equal to the settling defendants' apportioned share of the verdict. *Id.* at 668. The UCATA restricts, however, when a specific *pro rata* election will be allowed to operate. Section 8326 specifies that such a choice will become operative only if such a *pro rata* set-off would yield a set-off figure which is higher than the consideration paid by the settling tortfeasor. *Id.* A settling plaintiff, however, may not recover a shortfall from the remaining non-settling defendants if its settlement with the settling defendant is for an amount less than that defendant's apportioned share of liability. *Andoloro*, 799 A.2d at 78.

Here, at the conclusion of the trial, the jury found that the acts and/or omissions of Defendant Crane Co. and six Settling Defendants were a substantial factor in causing Decedent to develop malignant mesothelioma and ultimately his death. The jury apportioned to each tortfeasor a corresponding percentage of liability.

*Molding the Verdict*

When considering the parties' respective motions to mold the verdict, this Court is also guided by the holding in *Charles*. There, the Pennsylvania Supreme Court held that where a release has been executed, the verdict is reduced only by the allocated proportionate share of the

7

settling tortfeasor. *Charles*, 522 A.2d at 3. That is, the nonsettling tortfeasor may not enjoy a set-off which would reduce or lower its out-of-pocket expense below its own allocated share of the liability, contrary to Defendant Crane Co's. present argument. The *Charles* court opted for the *pro rata* set-off method, requiring a non-settling defendant to pay its full share of the verdict. The actual amount of the release, if it exceeds this sum, is of no consequence in the satisfaction of the judgment of the remaining nonsettling defendant. The fact that the plaintiff may receive a larger amount in damages than that determined by the jury (a windfall) does not militate against such an approach. *Id.* This practice of holding the nonsettling tortfeasor liable for his full proportionate share advances the policy in favor of settlement. *Id.*

Further, a nonsettling defendant's liability is not predicated upon the liability of any third party, *i.e.*, the settling defendants or non-parties. Rather, liability is based upon the deleterious effects of its own actions or products on plaintiffs. *Amato v. Bell & Gossett*, 116 A.3d 607, 616 (Pa. Super. 2015) (quotation marks omitted). A nonsettling defendant is only entitled to a reduction of the jury verdict based on settlements made by parties found to be joint tortfeasors. *Id.* at 617. Any set-off of Plaintiffs' claims and/or settlements with any asbestos bankruptcy trust that was not either joined in the litigation and/or found to be a joint tortfeasor is precluded. *Id.* Hence, a defendant is only entitled to a reduction of the jury verdict based on settlements made by parties, including settlement trusts, found to be joint tortfeasors. *Id.*

Here, Defendant Crane Co. argues for the exercise of "equitable powers" and this Court's consideration of Plaintiffs' purported settlements and claims filed with asbestos bankruptcy trusts to reduce its liability. Defendant Crane Co. relies upon *Reed v. Allied Signal, Inc.*, 20 Pa. D. & C.5th 385 (Phila. Ct. Com. Pl. 2010), *aff'd*, 40 A.3d 184 (Pa. Super. 2011), an asbestos/malignant mesothelioma case in which the trial court delved into the mechanics of the

Trust Distribution Process ("TDP"), and molded the verdict to reflect funds received from settling defendants and asbestos bankruptcy trust settlements. Defendant Crane Co.'s reliance on *Reed*, however, is misplaced. Unlike *Reed*, no asbestos bankruptcy trusts in this matter were found to be joint tortfeasors. Rather, under the UCATA:

> [A] non-settling defendant is not entitled to a set-off in light of the settling defendant's release unless the settling and nonsettling defendants are both deemed to be joint tortfeasors. 42 Pa. C.S. § 8326. Therefore, ACandS would not be entitled to a set-off unless the Manville Trust is deemed to be a joint tortfeasor, then eluctably it must be apportioned an equal share of the liability.

*Baker II*, 755 A.2d at 671-72.

Likewise, the Pennsylvania Superior Court's holding in *Amato*, a similar matter which also involves Defendant Crane Co., provides authoritative support for the proposition that a defendant is not entitled to a reduction of the verdict for non-parties to the litigation who settled with the plaintiffs prior to trial, absent the presentation of evidence from which the court could conclude that the non-parties are joint tortfeasors. *Amato*, 116 A.3d at 617 ("the company is only entitled to a reduction of the jury verdict based on settlements made by parties found to be joint tortfeasors by the court."). Therefore, because Defendant Crane Co. did not present evidence from which this Court could conclude that any non-parties are joint tortfeasors, and because the jury, after weighing the evidence, allocated liability amongst seven Defendants whom it determined to be joint tortfeasors, Defendant Crane Co. is only entitled to a reduction of the total jury verdict based on the Plaintiffs' settlements with parties found to be joint tortfeasors, *i.e.*, the Settling Defendants, and the jury's determination of Defendant Crane Co.'s apportioned share of liability.

Ignoring established case law, however, Defendant Crane Co. also argues that its liability should be reduced essentially to zero on account of Plaintiffs' settlements with other Defendants

and Plaintiffs' claims with asbestos bankruptcy trusts. However, Defendant Crane Co.'s dollar figure is derived from pure speculation. Because of confidentiality provisions governing the settlement agreements, Plaintiffs did not disclose to Defendant Crane Co. the types of releases entered into by the Settling Defendants and Plaintiffs mainly because Defendant Crane Co. refused to sign a confidentiality agreement. As mentioned, this Court has reviewed these settlement agreements *in camera*. Upon this review, were this Court to mold the verdict in strict accordance with the *pro tanto* and *pro rata* scenarios contemplated by the UCATA, both of which are applicable here, and the law described above, Defendant Crane Co. would actually be liable for more than what Plaintiffs seek in their motion. Nonetheless, as dictated by *Charles*, Defendant Crane Co. is liable for its full 30% share of the verdict.

## *Delay Damages*

Plaintiffs initially requested $66,955.35 in delay damages based on Defendant Crane Co.'s apportioned 30% of the total $1,085,000 verdict, or $325,500. [ECF 359]. As stated, Defendant Crane Co. contends that Plaintiffs are entitled to no additional damages but argues that to the extent this Court does award delay damages, the calculation of delay damages should not include Ann Rabovsky's loss of consortium award. In this latter regard, Defendant Crane Co. is correct.

Pennsylvania Rule of Civil Procedure ("Rule") 238 provides for delay damages in actions for bodily injury, death or property damage only, and (1) shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision, and (2) shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded. Pa. R. Civ. P. 238(a)(2)-(3). Rule 238

is applied as substantive Pennsylvania law by federal courts. *See Sealover v. Carey Canada Inc.*, 996 F.2d 42, 46 (3d Cir. 1993) (citing *Knight v. Tape, Inc.*, 935 F.2d 617, 622 n.4 (3d Cir. 1991) ("Rule 238 is 'substantive' for *Erie* purposes and thus must be applied by a federal court sitting in diversity").

A claim for loss of consortium is different from a claim for bodily injury. While it stems from the spouse's bodily injury it is, nevertheless, a separate and distinct claim. *Anchorstar v. Mack Trucks, Inc.*, 620 A.2d 1120, 1121-22 (Pa. 1993). Loss of consortium is a loss of services, society, and conjugal affection of one's spouse. *Id.* at 1122 (citing *Bedillion v. Frazee,* 183 A.2d 341, 343 (Pa. 1962); *Hopkins v. Blanco,* 302 A.2d 855 (Pa. Super. 1973), *aff'd*, 320 A.2d 139 (Pa. 1974)). One who has suffered a loss of consortium has not sustained a bodily injury but rather has experienced an injury to marital expectations. The mere fact that such a claim is joined in the same civil action as a claim for bodily injury does not alter its basic character as a separate and distinct claim. *Id.* (citing *Manzitti v. Amsler,* 550 A.2d 537, 538-42 (Pa. Super. 1988), *aff'd*, 574 A.2d 601 (Pa. 1990)).

At oral argument, Plaintiffs acknowledged the applicable law referenced by Defendant Crane Co. and submitted an amended motion for delay damages, [ECF 379], recalculating the amount of delay damages. Therefore, delay damages are calculated on 30% of $835,000 (total jury verdict minus loss of consortium damages), or as follows:

- 2011 Delay Damages: $250,500 (amount of compensatory damages) x 4.25% (interest rate) x .73 (number of days delay damages rewardable [265 days] ÷ 365) = $7,771.76

- 2012 Delay Damages: $250,500 (amount of compensatory damages) x 4.25% (interest rate) x 1.0 (number of days delay damages rewardable [365 days] ÷ 365) = $10,646.2

- 2013 Delay Damages: $250,500 (amount of compensatory damages) x 4.25% (interest rate) x 1.0 (number of days delay damages rewardable [365 days] ÷ 365) = $10,646.25

- 2014 Delay Damages: $250,500 (amount of compensatory damages) x 4.25% (interest rate) x 1.0 (number of days delay damages rewardable [365 days] ÷ 365) = $10,646.25

- 2015 Delay Damages: $250,500 (amount of compensatory damages) x 4.25% (interest rate) x 1.0 (number of days delay damages rewardable [365 days] ÷ 365) = $10,646.25

- 2016 Delay Damages: $250,500 (amount of compensatory damages) x 4.5% (interest rate) x .11 (number of days delay damages rewardable [40 days] ÷ 365) = $1,239.97

After totaling each year, Plaintiffs are entitled to $51,596.73 in delay damages. This amount, added to Defendant Crane Co.'s 30% apportioned liability amount of $325,500, results in a total molded verdict against Defendant Crane Co. in the amount of $377,096.73.

## CONCLUSION

For the reasons set forth herein, Defendant Crane Co.'s motion to mold the verdict and award is denied, Plaintiffs' motion to mold the verdict against Defendant Crane Co. is granted, and Plaintiffs' amended motion for delay damages is granted, in accordance with the calculations made. An Order consistent with this Memorandum Opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.J.*